The next case this morning is number 522-0079, Enray, the Marriage of Price. Arguing for the appellant, Paul Price, is John Glassman. Arguing for the appellate, Patricia Price, is Jennifer Bean. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Okay, good morning. Mr. Glassman, are you ready to proceed? I am, Your Honor. All right, you may do so. May it please the court, my name is Jonathan Glassman and I represent the appellant and ex-husband, Paul Price. This is the appeal of a dismissal and denial of appellant's motion for reimbursement of maintenance based upon appellee's cohabitation with another man while still receiving maintenance from appellant. The trial court judge had originally stated that the parties would have time to submit proposed judgments, but then he changed his mind during the trial and ruled from the bench. As a result of that sudden and unexpected decision, the written order based upon the ruling from the bench is very vague and does not set forth specific findings about the motion for reimbursement of maintenance. The appellee's motion to dismiss the motion for reimbursement was filed pursuant to 2-619A5 of the Code of Civil Procedure, namely that it was time barred by the statute of limitations. No other statutory grounds for dismissal were alleged in that motion. The motion to dismiss was granted, but no specific reason for granting the motion to dismiss was set forth in the trial court order. Appeals of a dismissal under 2-619 are reviewed de novo. The only specific reason given for the dismissal of the motion for reimbursement of maintenance was the marital settlement agreement. The court's order fails to explain why that agreement would preclude claims arising from events after the divorce was entered. This court has previously found that the failure to give a specific reason for granting a motion to dismiss is reversible error. In the Giles v. General Motors matter, the employer filed a 2-619 motion to dismiss, which was granted, but the trial court did not specify its grounds for dismissing the complaint. Giles provides that a 2-619 motion to dismiss should not be granted when it cannot be determined with reasonable certainty that the alleged defense exists. In this case, the trial court granted Apelli's motion to dismiss in which she alleged the claim was time-barred, but the order granting that motion makes no reference to statute of limitations. There is no specific statute of limitations for filing a motion for reimbursement of maintenance. Excuse me, counsel. If finality is definitely a concern of the court, why wouldn't the general two-year statute of limitations apply to the situation? Let's assume that this whole thing started when there was a discovery of the speeding ticket with the address of the alleged person you're alleging that the plaintiff was cohabiting with. If it began there, and yet it took almost three years before this action was filed, why wouldn't a two-year statute of limitations that would be generally, I think, applicable to an attack on a marital settlement agreement, which basically incorporates this particular maintenance agreement? Well, Your Honor, I would say that the issue of cohabitation being grounds for termination or reimbursement of maintenance is not really an attack on a marital settlement agreement. It's an attack on terminating an obligation set forth in the agreement, but I don't think we're saying the agreement itself is bad by seeking to reimburse maintenance. I think it's just saying that because the cohabitation occurred and there's no real time frame set forth specifically on when it can be sought for reimbursement, that that would be the case. So you're saying that if, for instance, a party has reason to believe that there has been cohabitation, that there's really no limitation on the time that they have to file an action to address that situation if they're going to seek reimbursement? Well, I don't think that there is a statute of limitations there. I mean, I think, for example, this court addressed a comparable situation in the Hayes v. State Teacher Certification Board case in 2005. A school principal had his teaching and administrative certificate suspended for five years due to The principal argued that the certification board knew about the criminal charges for many years and waited too long to act, but this court rejected that argument. The case noted that the state legislature did not provide an express limitation for suspension of teaching certificate actions, and therefore the action against this teacher was not precluded despite the passage of time. So I would say this is comparable where the statute doesn't say an action for reimbursement must be filed within a certain amount of time of finding out of potential cohabitation. I would also add that, I mean, this traffic ticket wasn't the be-all end-all for being sure that cohabitation occurred, so he wanted to investigate further before filing the motion. Maybe you can help me out. This is not a record. I've checked the record and I can't find any indication. What was the trigger for this particular traffic ticket appearing? I mean, after 10 years, all of a sudden some suspicion pop up that caused an investigation to discover this ticket, or did someone gratuitously give the respondent a copy of the ticket? How did this come into play? Well, your honor, I think my client was using a private investigator for some, in regards to another case that he's involved in, and I believe it was a FOIA request of the police department, of the Troy Police Department, about some other issues that incidentally, you know, tangentially related to his ex-wife, that that's how he came about it. Okay. Thank you. Continue with your argument. I'm sorry. Oh, go ahead. One question, Mr. Glassman. What do you think about the doctrine of latches being used to deny this claim? Well, I mean, I would say that the court did not give a specific reason for the denial of motion, of the motion for reimbursement, but the applicability was addressed by counsel at the hearing, and that would be reviewed under an abuse of discretion standard. So the premise of latches is to preclude assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party. But barring a claim due to latches requires a finding of both lack of diligence and prejudice resulting from the delay, so a mere time lapse is insufficient to sustain a latches defense. It must be proven how the delay created a change in conditions and caused him to pursue a different course of action. Without an injury caused by the delay, the defense of latches does not defeat a claim. So, latches has been addressed multiple times in the contents of child support arrears, and two different Illinois Supreme Court cases found that a party is not prejudiced for having to pay arrears in a lump sum as opposed to monthly installments. In this case, my client did not know of the cohabitation at any time it actually occurred. It was never told by his ex-wife that she had this relationship or lived with another man, and she even claimed it was not her responsibility to inform him about this cohabitation. She even admitted that he was not obligated to contact her on a regular basis or conduct surveillance to find out about any cohabitation. So if he wasn't told about the cohabitation and he was not obligated to conduct surveillance, then it would be difficult, if not impossible, for Apelli to be prejudiced by the timing of when he did file the motion for reimbursement. I mean, the main reason it took this long to file was because of the Apelli's apparent belief that she didn't have to tell him about cohabitation. So Apelli should not be able to claim prejudice when much of this delay in filing was attributed to her failure to inform appellant of her cohabitation at any time. The law calls for termination of maintenance in the event of cohabitation, and any maintenance collected after that point is reimbursable. So really there's no difference between not receiving maintenance due to termination of a future obligation and being ordered to reimburse maintenance already received due to cohabitation. She's no worse off having to pay back- Counsel, let me ask you something. Let me ask you a question, counsel. You're assuming that there was indeed cohabitation. Was this clearly a situation of cohabitation? I point particularly to Enri, the marriage of Miller, which has been hailed as kind of an enlightening decision, and that's 2015 elapsed second 140530. It reiterated the Supreme Court's holding that an intimate dating relationship is not a de facto marriage in and of itself. It went on to talk about the fact that the six factors that are used to determine whether there is a de facto marriage supposedly are just tools and not conclusive, that they also are factors that are directed for social and emotional considerations, and that they don't really take into consideration the all-important financial attachments that one might make. So, in other words, I guess simply they say, well, we'd like to look at this relationship, whether they are cohabiting in your sense, living together, whether they are in a dating relationship, is this a situation where either party could walk away, or are they more like a marriage situation where there are entanglements that would make it difficult for two parties to separate? I'm just asking you, what is the basis for your determination that there was indeed cohabitation? Well, I mean, I'm aware of the six factors, but the marriage of Susan case provides that the courts must look to the totality of circumstances, and I would say that these factors do not exist in a vacuum. I mean, in this case, there may not have been evidence, specific evidence of vacations and cohabitation. The appellee stated she was in a dating relationship with her future husband during the first year after divorce, and subsequently moved in with him in 2010. Six years later, she remarried this man that she cohabited with continuously throughout that time. She admitted to contributing to household expenses and mortgage payments while living with her future husband in his residence, and under the Lemming case of this court, the use of maintenance monies to support a co-resident is an important consideration in determining whether a de facto husband-wife relationship occurred. So in this case, using maintenance from an ex-husband to build up equity in a long-term boyfriend's home that appellee did not own herself, I think that's pretty clearly a use of maintenance monies to support her co-resident. She even testified at the trial that the money she received from appellant while cohabiting with her future husband helped with, quote unquote, my side of the living. This underscores that this was a de facto husband-and-wife relationship in which living expenses were shared. So even if there was not specific evidence of each of the six factors, it is clear that this was a long-term relationship in which they were dating, moved in together, and subsequently married about six years later. This underscores the totality of the case. Let me ask you about that six years later marriage. One of the considerations is that, I guess it's equitable, that you don't want a situation where someone is, in fact, an ex-spouse who's receiving maintenance, who engages in a relationship and to keep the maintenance avoids legalizing the marriage. So it's sort of a subterfuge. How much does it show the delay in them ultimately getting married that this was not a situation where they were trying to, in any way, avoid losing maintenance by not getting married? Well, Your Honor, I would say that while I don't know what their plans were for marriage right when the maintenance obligation stopped coming in, I don't believe that that's a factor that needs to be considered and whether it was against the manifest weight of the evidence to deny this motion to terminate. In the Halford case, which was from the Fifth District, the trial court denied a motion to terminate maintenance based on cohabitation. In that case, another man resided in the former wife's home for over three years but did not pay rent, contributed $40 a week for food and utilities, and occasionally had sexual relations. On appeal, this court held that the finding that the relationship was not continuing was contrary to the manifest weight of the evidence. So this court held that the denial of a termination of maintenance in a situation with far shorter relationships and cohabiting was a reversible error. So I would say for a trial court within this Fifth District to deny motion for reimbursement of maintenance in a case with dating relationship, long-term cohabitation, and eventual marriage is clearly a reversible error under the holding of the Halford case. I would also point to the Walter case from the Third District. The former wife was in a relationship for about two years, slept at her boyfriend's home in a shared bedroom for several months, did laundry, groceries, and meals at his home, did some trips and holidays together, but she still maintained her own residence. And the Third District found that the trial court's denial of a motion to terminate maintenance there was contrary to the manifest weight of the evidence and remanded with instructions to terminate and order refund of any maintenance paid after the cohabitation began. That's essentially what we're asking to do here. What's the date that you believe the continuing conjugal relationship began? Well, I would say that should be on remand, but I would say, I mean, at a minimum it began when on the date that Apelli admitted to moving in with her future husband, which was I think in August of 2010. And I think she received maintenance until July of June or July of 2012, I believe July. So I would say that, you know, that last two years would certainly be time that continuing conjugal cohabitation occurred. Do any of the cases that you cite, that you just cited to us, do any of them have long seeking reimbursement? I don't believe so, Your Honor, I would say that, but I don't think any of these cases involved where the, well, because I mean, in general, these were cases where the obligation was still ongoing. So there was also a motion to terminate involved, but I would say that, I mean, to limit the reimbursement for people who only still have a future obligation, I would say that's illogical and unjust as the way the statute's worded and prior case, although the statute codified, there is a right to reimbursement of maintenance paid after cohabitation. I don't see that it's limited by time. I didn't think I asked you about whether there was a continuing obligation to pay. I was just curious about whether there was a delay like we see in this case, because, and I'm sure your opposing counsel is going to address this, but I go back to the issue of whether there was a finding of latches here. So Mr. Glassman, your time is up, but you will have a few minutes to respond. So let me move on. One question, counsel. Okay. Judge Wharton. You stated that the trial court based its ruling solely upon the marital settlement agreement. Was that true? Weren't there some other findings by the court relative to certain allegations that it thought were without merit? Well, I mean, it was very vaguely worded. I think it said there was not sufficient legal or factual support in the claims raising the pleadings, but I don't see that as making a factual finding. There was also a statement. There were many allegations raising the pleadings that were unsubstantiated, but it doesn't say which allegations were or were not unsubstantiated. So I would say that that's sort of leaving everybody in the dark way too much. And I didn't really get to that point, but there is a whole body of case law that, including marriage of Douglas from this court, that where a trial court awarded support, maintenance and fees to a wife, but made no findings about the income of either party. And so it is reversible error and abuse of discretion for a trial court to enter a judgment without making adequately specific findings. Because for this reason, we're leaving the court of appeals in the dark for knowing why the court ruled the way it did. Thank you. It seems to me there's something made about this ticket, but the ticket was a speeding ticket in 2009. You say that the continuing conjugal relationship didn't start until maybe August of 2010. He didn't file until when, 2020? Right. I mean, I'm not sure what difference does the ticket make if you say that didn't even apply because there wasn't a relationship until 2000 and August of 2010. Well, I would say that the ex-wife admitted to moving in with the guy in August of 2010. I would say there's no doubt it happened before that. The issue of whether things, there was evidence that they maybe didn't live together before that, aside from this ticket, there was other evidence that they didn't live together. So as she said, they didn't live together at that point. I think that finding evidence of that ticket where the address happened to be listed, that was just sort of a clue that, hey, maybe there's something going on here, it needs to be investigated further. I guess I'm just bothered by the idea that, I'm not sure whose responsibility it was, his to find out or hers to disclose, but you have a lapse here from, which goes back to Justice Cates' question about latches. You have a lapse here from either 2009 or 2010. Maybe you stretch it out to 2017, but he doesn't file anything until 2020. I mean, that just seemed like a long time for people to sit on their rights or ignore their rights or fail to investigate. There's a lot going on here over a long period of time, but at what point is the cutoff? Well, I mean, I would say that, you know, in the latches cases from the Supreme Court about child support arrears, there really isn't one. And I would say that, you know, maintenance... Support's a little different though. Support is the best interest of the child. There's a third party that's at issue there and maintenance, you have these parties, actually the parties to this case. So support's a little different than maintenance to me. Right. But I would say that also the delay between finding out in 2017 and filing in 2020 is immaterial here because the obligation had already terminated by that time. So, I mean, it was, yeah, I mean, being asked to pay back money you shouldn't have received in 2017 when you're not having a future obligation, I don't see how that affects the other party any more than being asked to pay it back three years later. The obligation had already ended when he found out and yeah, I mean, that'll be it. Okay. Mr. Glassman, Justice Farr and any other questions? No, thank you. All right. Justice Wharton. On the issue of laches, you make a point about it not being prejudicial to later on pay money that may have been awarded improperly. What about as far as prejudice? Someone who assumes that their marriage has been terminated and 10 years later they wind up right back in court, basically embroiled in the same issues that they were embroiled in 10 years ago. Isn't that highly prejudicial, an interruption of your life? Well, I would say that on some of the motions that were also filed at the same time and were denied but are not being appealed perhaps, but I don't see how that carries over to maintenance received during cohabitation after, you know, while receiving, I just don't see how that's not really reopening the divorce. It's just saying during this time that you got maintenance and I mean, plenty of courts have in this district and others have allowed people to sort of reopen that and look at what's happening after the marriage in spite of whatever agreements there were. So I would say, yeah, as far as just having to answer about cohabitation, I would say no, that's not prejudicial. Thank you.  Justice Vaughn? Justice Wharton? No. No, thank you. Okay. Is it Ms. Beam? Yes, Your Honor. All right. Thank you. Let's hear from you. Thank you. May it please the court. This case is simply about Mr. Price not meeting his burden in regard to proving cohabitation on a continuous conjugal basis. Though even as we're here today, Mr. Price's argument is that he did meet that burden. I do think that it is significant to consider the timing. The timing of the evidence presented was primarily back to 2008, 2009. The majority of it having been accessible by Mr. Price prior to entering into the marital settlement agreement. During his testimony, Mr. Price acknowledged that particularly the phone records that he utilized to attempt to show the start of any relationship between Ms. Price and her now husband, Mr. Box, was occurring, were in his possession at that time, and he simply did not review them due to other matters going on during the divorce proceedings. That should not then allow him to come back 10 years after entering into that marital settlement agreement to try to change the terms of it. There is supposed to be finality in regard to these proceedings, and the court favors that finality because this is a significant disruption. We're talking about matters that were settled 10 years ago and now having to face relitigating the entirety, honestly, of the marital settlement agreement because while the only issue on appeal is maintenance, there were requests to vacate the entirety of the marital settlement agreement at the time this case was reopened by Mr. Price or attempted to be reopened by Mr. Price. Let me ask you a question because whether it's sufficiency in the evidence or dismissal under 2-619, what do you have to say about the court's order and its specificity? I believe the court's order is sufficient, Your Honor. Basically, I know Mr. Glassman is attempting to argue that the ruling from the bench is not relevant because the entirety of it was not reduced to court order, but I don't think that's appropriate. I think that is part of the record here. The court indicated in its order that there were many allegations raised in the pleadings filed by respondent that were unsubstantiated. The court also found that there is not sufficient legal or factual support for the claims raised in the pleadings filed by the respondent. In ruling from the bench, the court indicated that there has been much testimony today, but it amounts, in the court's opinion, to many elements of suspicion. There's allegations without any true proof. There has been conjecture by the respondent. All of that is unsubstantiated by any direct proof. So Mr. Glassman is seeking for the court to make specific findings to cite to specific evidence, but the court has indicated there's nothing for the court to make any findings other than to say the burden was not met. There were no exhibits upon which Mr. Price could base his argument. So I think the totality of the oral ruling from the bench, as well as the terms of the order, did make it such that the court's ruling was adequate. I also think that the court first made its ruling to deny the motion for reimbursement of maintenance, finding that Mr. Price did not meet his burden. Quite honestly, I don't know that the trial court even then needed to make a ruling on the motion to dismiss, as that motion was moot, having made the finding that the allegations were not proven in the motion for reimbursement itself. So that's an interesting argument you've just made. You're saying that there was a judgment on the pleadings? Yes. And you're saying that the motion to dismiss at that point was moot? I believe so, Your Honor, because the court did make it very specific to go in a certain order, and that was to deny Mr. Price's pleadings first, and then to go through the motions to dismiss. Okay. Interesting. Thank you. In terms of Mr. Price's argument that there is no statute of limitations issue in regard to terminating maintenance, that argument is interesting to be made at this point, particularly because the motion for reimbursement of maintenance alleged that any statute of limitations was told by Ms. Price's fraudulent concealment of information from respondent that gave rise to his claim. So, in doing so, in my opinion, there's an allegation or an admission that there is some sort of statute of limitations, but yet Mr. Price did not do anything in regard to proving any fraudulent concealment on Ms. Price's part, including to show any evidence by convincing facts as to any false statement of material fact, any known or believed to be false statements made by the party, any intent to induce any action in reliance or any damage to the party. Ms. Price was not obligated to tell that she was cohabiting because she wasn't cohabiting. She never admitted she cohabited. She admitted that at a point she moved in with Mr. Box. There was no evidence to show any of the six cohabitation factors to prove that she was in fact cohabiting. By Mr. Price's own testimony, he indicated that he believed that she was having an affair and when questioned as to whether he was aware that proving an affair did not prove cohabitation, he indicated that he was not in fact aware of that. There was no evidence presented to show the amount of time that Ms. Price and Mr. Box spent together prior to them residing together in 2010, the nature of the activities they engaged in, the interrelation of their personal affairs, including finances, whether they spent holidays together. Mr. Price, in fact, admitted that he did not have any proof of gifts that Ms. Price had There was focus in terms of the telephone records, not only showing the start of any communications between Ms. Price and Mr. Box, but also any communications that Ms., I apologize, my client's name is now Ms. Box, any communications that Ms. Price was having with Mr. Box's father, his daughter. There was no evidence presented as to any gifts that she may have given to any of those individuals either. This court in remarriage of Nolan has indicated that something more than merely living with a person of the opposite sex is required to show cohabitation, that that is all that has been proven is that at some point, Ms. Price moved in with Mr. Box, that in and of itself does not prove cohabitation, and there was nothing presented beyond that to show cohabitation other than Ms. Price and Mr. Box residing at the same address. So what about, I guess, the deposition that there was a sharing of expenses? Ms. Price indicated that she was responsible for her share of the living expenses. That was not an indication that she was responsible for any of the mortgage or the residence, which was solely in Mr. Box's name. In regard to Mr. Price's argument that this court remanded matter for a full evidentiary hearing on the merits with regard to the dismissal of the motion for reimbursement, it is concerning as to Mr. Price's ongoing argument for remand for further hearing when the court did conduct a trial all day on January 10th, at which time evidence, significant evidence and testimony were presented. This is not a case where the court simply granted the motion to dismiss on its face without affidavits, without hearing. The court considered extensive testimony and evidence of multiple witnesses before denying the motion for reimbursement. And I do think that is significant here because there was an evidentiary hearing conducted. I think it is also significant that Judge Motel ruled from the bench instead of having the parties submit proposed orders, despite his earlier indications that he was going to expect them to be prepared. There was sound reason in that decision, and that was because Mr. Price failed to meet his burden in regard to the allegations he raised. The court made it clear that it considered not only the terms of the marital settlement agreement, but the fact that the allegations raised by Mr. Price had not been substantiated by any proof. The court, in my opinion, made sufficient findings on the record and in the order of January 12th to deny the motion for reimbursement of maintenance. The evidence and testimony that was presented does not amount to cohabitation on the part of Ms. Price. Mr. Price seems to be of the belief that simply proving that Ms. Price had communications with Mr. Box or that she began residing with Mr. Box rises to the level of cohabitation, which bars or terminates maintenance. That is not the case based on this court's prior case law. Mr. Price has simply not met his burden to prove the relevant facts to show cohabitation. Therefore, I respectfully request this honorable court affirm Judge Motel's ruling. Okay. Thank you. Um, any questions, Justice Wharton? Justice Rolling? No questions. Thank you. All right, Mr. Glassman. Uh, Mr. Glassman, let me ask you a question. What, what relief are you seeking in this case? I would like the case to be, uh, remand. Well, I'd like the case to be remanded for a hearing on, to determine when the cohabitation actually began and then the amount of money to do an owing to the appellant, uh, that was wrongfully paid or wrongfully received while a pilly was, uh, cohabitating with her future husband. Well, wait, wasn't that the basis of what the trial was about? Well, Your Honor, there was, the court never made a finding about cohabitation. I understand your position on finding, which is why I'm trying to understand whether you want remand for findings or whether you want a reversal with a new trial, that's exactly why I asked the question. It seems to me you've already had a hearing on your pleadings. Right. Well, I mean, for example, I guess I'm seeking the relief that the third district, uh, held in the, uh, Walther case that, um, a remand with instructions to terminate and order refund of any maintenance paid after the cohabitation began. Now I guess terminate doesn't apply here, but basically a remand to order refund of any maintenance paid after cohabitation began. And I think it's clear it began when, when, when a pill, when a pill, he said she moved in with Mr. Box, who she later married and she was already in a dating relationship with. I think that goes to the very heart of a conjugal continuing cohabitation, the duration of it, uh, the permanency of it, her admission that they were already in a dating relationship when it began and the fact that she was Mr. Box's mortgage. I mean, I think that the use of maintenance money to support a co-resident, uh, that clearly is ground grounds for finding de facto husband, wife relationship. Um, so it sounds like you want us to find that the order of the court was an abuse of discretion and against the manifest way, the evidence and enter our own judgment for you rather than grant a new trial or anything like that. Well, I mean, if, if, if this court believes, I'm asking you, is that true? I I'm not sure what, what it is you want. Well, I would say there's two things. One, it was an abuse of discretion to enter an order without specific enough findings to, it was against the manifest way to the evidence to deny the motion for reimbursement given, um, given the evidence of cohabitation that was there. I mean, I would, I would strongly dispute, uh, Ms. Beam's statements that there were no exhibits. Uh, I mean, moving in is, is the same as cohabiting. She said she was in a dating relationship and it's not in this argument that my guy should somehow be limited to the allegations in his motion for law for that, that that's what we came across in discovery. Uh, the, the issue of gifts is misleading to the court. It's not relevant to the appeal. My client shouldn't be penalized on this motion for reimbursement for on the finality issue, because he also asked to open up, uh, the reopen the divorce stuff. I don't think that should deny him the right to seek reimbursement, even though he, he's not challenging the denial of reopening the other parts of the and as far as the phone records, that's, I mean, that shows that maybe the length of their relationship, but not necessarily that it was continual. Conjugal cohabitation at the time they were talking on the phone. It was just sort of the buildup to when it became a cohabiting relationship. Um, and so the fact that they had some, they had a lot of phone calls before the divorce. I don't think that while that might preclude if he could have discovered that before the divorce, that might preclude reopening the divorce based on that. I don't think it precludes, uh, asking for reimbursement of maintenance because there was other evidence after the divorce that they did cohabit for many years. Is there anything in your knowledge base that would allow, uh, a court to conclude that an individual can agree to pay maintenance, even though they know there's a dating relationship going on? In the marital agreement. Um, could they agree to that contractually? Yeah, it was settled. It was not by trial. That is correct. But, um, was that argued here? Was it our, well, I mean, I think, uh, I wasn't arguing it, but I guess I'm asking was one of the arguments here that your client knew about the dating relationship and nevertheless, no, he did not know about it at all. Uh, I think, yeah, it wasn't until years and years later, they found out this could have been happening. He had no idea about any kind of affair or relationship while they were going through the divorce proceedings. And that was the whole basis for wanting to reopen the divorce. Now, the fact that maybe he could have found out about it before the open, the actual property division of the divorce, but maintenance paid after the divorce while she, while there's this ample evidence in her own admission of cohabiting, I would say that's a different issue and that's reimbursable, uh, according to five slash five, 10 C. I mean, that's what the statute says. It shall be reimbursed. Okay. Thank you. Uh, justice Wharton, any other questions? Justice Vaughn. No, thank you. Okay. Thank you both for your arguments. It's an interesting case. Um, this matter will be taken under advisement. We'll issue an order in due course. Thank you both. Have a great day.